**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| Billie Jerome Allen, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:21-cv-00396-JPH-DLP |
| ) | |
| T.J. Watson, ) | Capital Case |
| Warden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**REPLY IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, through counsel, respectfully submits this reply in support of his petition for writ of habeas corpus.

On October 21, 2021, Mr. Allen filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Dkt. No. 1.  The petition raises a claim under *Borden v. United States*, 141 S. Ct. 1817 (2021), challenging Mr. Allen's conviction on Count 2, wherein he was convicted and sentenced to death for the offense of using and carrying a firearm during the commission of a crime of violence in which a murder occurs, in violation of 18 U.S.C. § 924(c)(1) and 924(j)(1).[1] The crime of violence that served as the predicate offense in Count 2 was bank robbery in which a killing occurs under 18 U.S.C. § 2113 (a) and (e).  The petition alleges that the least culpable means of committing § 2113(a) and (e) does not require a mens rea greater than recklessness, and thus it is not a crime of violence under *Borden*.  Mr. Allen is therefore innocent of § 924(c) and (j)—the crime which serves as the basis for his sentence of death.

---

[1] In Count 1, Mr. Allen was convicted of bank robbery in which a killing occurs pursuant to 18 U.S.C. § 2113(a) and (e), for the same homicide, and he was sentenced to life imprisonment without the possibility of parole. That conviction is not at issue here.

1

On January 25, 2022, the government filed its response.  Dkt. No. 9 (cited herein as "GR").  The response raises procedural and substantive defenses, but none of these defenses survive scrutiny.  Below, this reply refutes the government's contentions in the order they were presented in its response.

## I.  PROCEDURAL DEFAULT DOES NOT APPLY HERE; EVEN IF IT DID, PETITIONER COULD OVERCOME ANY DEFAULT.

The government first argues that Mr. Allen defaulted this § 2241 claim by failing to raise it on direct appeal or in his first § 2255 petition.  GR 7.  The doctrine of procedural default, however, does not serve as an independent barrier to habeas relief where the petition is authorized by the savings clause under § 2255(e), because the Seventh Circuit's saving clause standard already incorporates procedural default principles.  Section 2241 is only available where the petitioner did not previously have "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence."  *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998).  Neither direct appeal nor § 2255 provide such "a reasonable opportunity" where:

> (1) [the § 2241] claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion;
> (2) the petitioner could not have invoked the decision in his first § 2255 motion and the decision applies retroactively; and
> (3) the error is grave enough to be deemed a miscarriage of justice.

*Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019) (quoting *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019)).  The Seventh Circuit's case law thus already limits § 2241 to petitioners who could not reasonably have raised their claim previously and who establish a miscarriage of justice in any event.  This Court should reject the government's attempt to graft an additional layer of procedural default analysis onto a standard that already incorporates it.

The government relies on *Bousley v. United States*, 523 U.S. 614, 621 (1998), *see* GR 7, but *Bousley* does not apply.  The nature of the claim in *Bousley* was materially different than the one at issue here.  In successive § 2255 proceedings, Bousley raised a constitutional claim that his guilty plea was not voluntary where a later Supreme Court decision heightened the government's burden of proof under the relevant federal firearms statute.  523 U.S. at 620.  Because there was "surely nothing new" about the principles governing Bousley's constitutional claim, and because he had not challenged the voluntariness of his plea on direct appeal, the Court applied the doctrine of procedural default.  *Id.*  Here, by contrast, there surely is something new in the Supreme Court's holding in *Borden* that general intent does not suffice to establish a crime of violence.  Mr. Allen raises a statutory claim based directly on that holding—not through the prism of an overlying constitutional claim—and thus his claim could not have been raised on direct appeal.

Even assuming, arguendo, that procedural default applies, Mr. Allen can overcome the default because he is actually innocent of Count 2.  *See, e.g.*, *United States v. Bowen*, 936 F.3d 1091, 1095 (10th Cir. 2019) (holding defendant actually innocent under § 924(c) when the predicate conviction no longer qualified as a crime of violence); *United States v. Reece*, 938 F.3d 630, 634 n.3 (5th Cir. 2019) (same).  As the government concedes, actual innocence overcomes any procedural default.  GR 7-8.  By disputing the merits of his claim, i.e., by arguing that federal bank robbery cannot be committed recklessly, the government argues that Mr. Allen cannot show actual innocence.  GR 8.  This argument implicitly acknowledges that, if Mr. Allen does show that federal bank robbery can be committed recklessly, then, under *Borden*, Mr. Allen can establish actual innocence and overcome any procedural default.  As set forth in parts IV to VI, *infra*, Mr. Allen makes that showing, and his entitlement to relief on the merits therefore

3

moots the government's procedural defense.  This conclusion accords with a core purpose of §
2241 "to prevent a custodian from inflicting an unconstitutional sentence," *Webster v. Daniels*,
784 F.3d 1123, 1136, 1139 (7th Cir. 2015) (en banc), and is of "paramount importance [in]
avoiding the injustice of executing one who is actually innocent," *Schlup v. Delo*, 513 U.S. 298,
326 (1995).

Mr. Allen can also overcome any default by showing cause and prejudice.  Under *Reed v.
Ross*, 468 U.S. 1, 17 (1984), cause for failing to raise a novel claim in a prior proceeding can be
established in a number of ways, including: "(1) when the Supreme Court explicitly overrules
prior precedent; (2) when a decision overturns a longstanding and widespread practice . . . ; and
(3) when a decision disapproves of a previously-sanctioned practice."  GR 7-8 (quoting *White v.
United States*, 8 F.4th 547, 555 (7th Cir. 2021)).  The government contends that none of these
situations applies here because "*Borden* was not so 'novel' to constitute cause to excuse
procedural default."  GR 7-8.

The government's narrow focus on *Borden* misses the point.  Throughout Mr. Allen's
direct appeal and initial § 2255 proceedings (which the district court denied in 2014), his crime
of violence conviction could only be challenged if he could overcome *both* the force clause and
the residual clause.  *See* 18 U.S.C. § 924(c)(3) (defining crime of violence as established where
the force clause "or" the residual clause is met).  But it is settled law that, before June 26, 2015,
when the Supreme Court invalidated the residual clause in *Johnson v. United States*, 576 U.S.
591, the residual clause's validity was not open to serious question.  The Court, in fact, had
upheld the clause repeatedly.  *See Sykes v. United States*, 564 U.S. 1, 15-16 (2011); *James v.
United States*, 550 U.S. 192, 210 n.6 (2007).  The Seventh Circuit has thus explained: "we agree
with our sister circuits that 'no one—the government, the judge, or the defendant—could

4

reasonably have anticipated *Johnson*.'"  *Cross v. United States*, 892 F.3d 288, 295 (7th Cir.

2018) (quoting *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017), in turn, quoting

*United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016)).  *Johnson* therefore "satisfie[s] the

first criterion of *Reed*," and Mr. Allen's "inability to anticipate *Johnson* excuses [his] procedural

default."  *Cross*, 892 F.3d at 295-96.[2]

## II.   PETITIONER MEETS THE REQUIREMENTS OF THE SAVINGS CLAUSE UNDER 28 U.S.C. § 2255(e).

As set forth in the petition, the requirements under the savings clause are met because (1)

Mr. Allen's claim is statutory, not constitutional; (2) *Borden* is a retroactive decision that Mr.

Allen could not have invoked in his first § 2255 motion; and (3) the error shows a fundamental

defect in his conviction on Count 2. Pet. 13-15 (discussing *Davenport*, 147 F.3d at 610-12); *see

also Chazen*, 938 F.3d at 856 (quoted *supra*).  The government concedes that *Davenport*'s first

prong applies but argues that the second and third prongs do not.  GR 10.  Specifically, the

government claims that Mr. Allen could have "invoked the [*Borden*] decision in his first 2255

motion," and that "there was no miscarriage of justice," because there was no error on the merits.

GR 10.  These arguments mirror the government's procedural default arguments and are

misplaced for the same reasons.

Regarding the second prong, the government relies on the formulation in *Light v.

Caraway*, 761 F.3d 809, 812-13 (7th Cir. 2014), that a petitioner must "show that his claim was

foreclosed by binding precedent at the time of his direct appeal and § 2255 motion."  GR 10

(quoting *Light*, 761 F.3d at 813) (internal quotation marks omitted).  The government reasons

that, when Mr. Allen filed his § 2255 motion in 2009, Eighth Circuit precedent "under 18 U.S.C.

---

[2] Although not necessary to its holding, the court in *Cross* also found that *Johnson* met "[t]he second and third scenarios identified by *Reed* . . .  to excuse [Petitioner's] procedural defaults." *Cross*, 892 F.3d at 296.

§ 16(a)," i.e., the force clause, "was in flux" such that he could have raised his mens rea/recklessness arguments at that time. GR 10-11. As with its procedural default arguments, however, the government overlooks that, until *Johnson* was decided in 2015, Mr. Allen could not allege that his conviction was invalid because it remained firmly lawful under the residual clause. Thus, when his direct appeal ended in 2006 and his first § 2255 motion was denied in 2014, Mr. Allen could not have attacked the validity of his crime of violence conviction under § 924(c)(3).

*Cross* makes clear that, where a crime of violence judgment could rest on either the force clause or the residual clause, a defendant had "no basis to assert" a challenge to the legality of his sentence until after *Johnson* was decided. 892 F.3d at 295. In *Cross*, the Circuit discussed the Supreme Court's earlier decision in *Curtis Johnson v. United States*, 559 U.S. 133 (2010), which undermined the sentencing court's reliance on the force clause in determining that petitioner Davis was a career offender. *Id.* at 296-97. But *Curtis Johnson* "said nothing about the residual clause," and "thus provided Davis with no basis to move for resentencing under section 2255." *Id.* at 297. This was because § 2255(a)—like § 2241(c)(3) here—limits motions for relief to those alleging the invalidity of a judgment due to a "violation of the Constitution of laws of the United States." *Id.* The Seventh Circuit explained:

> Prior to [*Samuel*] *Johnson*, Davis had no basis to assert that his sentence was illegal and thus he could not claim a right to be released. *Curtis Johnson* did not change that fact: all it did was to eliminate the elements clause as a basis for Davis's status, which became entirely dependent on the residual clause. There matters stayed until *Johnson*. Only then could Davis file a nonfrivolous motion for relief. . . . It was not until *Johnson* that the Supreme Court recognized Davis's asserted right "*to be released*" on account of an illegal or unconstitutional sentence. 28 U.S.C. § 2255(a) (emphasis added).

*Id*. at 297-98. Just as *Johnson* and *Curtis Johnson* worked in tandem in *Cross* to provide "nonfrivolous" grounds for relief undermining the residual clause and force clause, respectively,

so do *Johnson* and *Borden* work in tandem here.  Accordingly, Mr. Allen could not have raised

his *Borden* claim when his first § 2255 motion was filed in 2009, and he meets the second prong

of the *Davenport* standard.

The government's reliance on *Light* also overlooks substantial Seventh Circuit precedent

that supports an even more permissive application of *Davenport*'s second prong.  The Seventh

Circuit has "held that a petitioner seeking relief under § 2241 need only show that the case on

which he relies had not yet been decided at the time of his § 2255 petition."  *Chazen*, 938 F.3d at

861 (citing cases).  "Under this formulation, [Mr. Allen] would meet the second criteria because

the Supreme Court decided [*Borden*] . . . after his initial § 2255 petition."  *Id*.

Finally, in the same way that Mr. Allen establishes actual innocence by demonstrating his

right to relief under *Borden*, *see supra*, part I, he can likewise establish a miscarriage of justice

under *Davenport*'s third prong by proving that federal bank robbery can be committed

recklessly, and thus that his conviction under Count 2 is invalid as a matter of law.  In other

words, resolving the third prong under *Davenport* depends wholly on resolving on the merits of

Mr. Allen's claim for relief.  *See infra*, parts IV – VI.

## III.   EIGHTH CIRCUIT LAW CONTROLS THE SUBSTANCE OF PETITIONER'S CLAIM.

Before arguing the merits, the government raises a novel argument that Mr. Allen "must

demonstrate that he would be entitled to relief in both [the Seventh and Eighth] circuits."  GR 12.

No precedent supports this argument, and in fact, the overwhelming weight of authority dictates

that the law of the circuit of conviction, here the Eighth Circuit, governs the merits of a § 2241

claim.

The government acknowledges the usual rule that "Congress intended collateral review

of a conviction or sentence to be made under the same legal standards used by the trial court in

the first instance."  GR 12 (quoting *Salazar v. Sherrod*, No. 09CV-619-DRH-DGW, 2012 WL 3779075, at *5 (S.D. Ill. Aug. 31, 2012), and *Chazen*, 938 F.3d at 865 (Barrett, J., concurring)). Indeed, every court to resolve a dispute about which circuit law applies—including in this District—has determined that the law of the originating court controls.  *See, e.g.*, *Cano v. Warden USP–Terre Haute*, No. 2:17-cv-441, 2018 WL 3389746 (S.D. Ind. July 12, 2018); *Hahn v. Moseley*, 931 F.3d 295, 301 (4th Cir. 2019); *Olive v. Warden, FMC-Fort Worth*, No. 4:21-CV-1032-P, 2021 WL 6617718, at *1 (N.D. Tex. Dec. 28, 2021); *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 554 (S.D. Ill. 2001); *see also Burgess v. Williams*, No. 4:18-cv-2643, 2019 WL 2641902 (N.D. Ohio June 27, 2019); *Roberts v. Watson*, No. 16-cv-541, 2017 WL 6375812 (W.D. Wis. Dec. 12, 2017); *Eames v. Jones*, 793 F. Supp. 2d 747, 749 (E.D.N.C. 2011).  As the court in *Hernandez* explained:

> The rule ensures that the law that prevails in the judicial circuit of any federal prisoner's conviction, or a substantially similar law, is the law that will be applied to the prisoner's § 2241 petition seeking vacation of a conviction.  Application of the law of the place of conviction is a consistent, reasonable rule, as is evidenced by the requirement that § 2255 motions be filed in the district of conviction.  The rule [petitioner] believes appropriate —applying the substantive law of the place of confinement—is actually far more arbitrary.  Such a rule would base the choice of law decision on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational factor of the place of conviction.

242 F. Supp. 2d at 554.  In *Chazen*, then-Judge Barrett opined that "[t]his position has force." 938 F.3d at 865.

The Seventh Circuit has repeatedly recognized, since *Davenport*, that it has not settled this choice-of-law issue, *see id.* at 860; *id*. at 866 (Barrett, J., concurring); *Guenther v. Marske*, 997 F.3d 735, 742-43 (7th Cir. 2021), and some courts actually read *Davenport* as indicating that the law of the circuit of conviction controls, *see Hahn*, 931 F.3d at 301; *Hernandez*, 242 F. Supp. 2d at 554.  The government nonetheless claims that *Davenport* requires the merits of a

petitioner's claim to be evaluated under *both* the law of the circuit of conviction and the circuit

of detention.  GR 12.  The government misreads *Davenport*.  The *Davenport* court made clear

only that, where a defendant is convicted under the harsher law of one circuit, he may not then

seek and obtain § 2241 relief under the more favorable law of the circuit of his detention.  147

F.3d at 612.  Here, Mr. Allen accepts that the law of his court of conviction applies to analyze his

claim; where an offense occurred in the Eighth Circuit, Eighth Circuit law should govern.

Unlike in *Davenport*, it is the government that is forum shopping for favorable law here.

It bears emphasis that the government's argument would turn the categorical approach on

its head.  Categorical analysis requires courts to consider "the least culpable" conduct covered by

the statute, *Borden*, 141 S. Ct. at 1822, but under the government's approach, the law of the

circuit that punishes the most culpable conduct would control.  The Court should reject the

government's novel and unsupported argument.

## IV.     THE FEDERAL BANK ROBBERY STATUTE IS BROADLY WRITTEN TO INCLUDE RECKLESS OR UNINTENTIONAL MENS REA AND IS, THEREFORE, NOT A CRIME OF VIOLENCE UNDER *BORDEN*.

The government argues that federal bank robbery is a general intent crime that requires a

defendant to act knowingly.  GR 13-16.  In its view, this satisfies the mens rea requirements

under *Borden* and, thus, satisfies the requirements of a crime of violence.   This argument should

be rejected for at least two reasons.  First, under Eighth Circuit law, which, as discussed above, is

controlling, bank robbery by intimidation can be committed in circumstances where a defendant

acts unintentionally or recklessly.  Second, even under Seventh Circuit case law, the mere

identification of an offense as a general intent crime does not satisfy *Borden*.

9

A. ***Borden* Changed the Standards for Determining Whether a Predicate Offense is a Crime of Violence.**

The government relies heavily on Seventh and Eighth Circuit case law, decided prior to *Borden*, that held that federal bank robbery was a crime of violence. GR 13. Those cases, however, are not controlling, because *Borden* changed the legal landscape. In *Borden*, the Supreme Court held that intentionally performing a particular act is not a sufficient mens rea for the force clause. Indeed, both the plurality and concurring opinions in *Borden* agreed that, in order to satisfy the force clause, the elements of the offense must require a specific intent to harm or threaten to harm another.

The plurality in *Borden* reasoned that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator *direct his action* at, or *target*, another individual." 141 S. Ct. at 1825 (emphases added). Even where a perpetrator's conduct has caused force to be applied to another person, but he did not "consciously deploy[]" or "train[]" the force on another knowing the other would be impacted, the perpetrator's conduct does not qualify as "physical force against the person of another." *Id.* at 1827. To come within the force clause, physical force put in motion by a deliberate act must be accompanied by an intent to apply that force or threaten force "against the person of another." *Id.* at 1826-27. And, critically, that requires "a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *Id.* at 1830. The plurality was clear that an offense that requires only that an act be done knowingly does *not* have the requisite mens rea, even if it threatens force or carries that "potential." *Id.* at 1827.

Accordingly, an offense only qualifies as a "crime of violence" under the force clause if it requires deliberate intent to harm or threaten harm against another. What is dispositive under the force clause, the plurality underscored, is not whether a defendant's prior actions

*caused* harm or threatened harm, but whether—when he acted—he *intended* to harm or threaten harm against another. *Id.* at 1831, n.8. Justice Thomas, who supplied the fifth vote, agreed with the plurality on that critical point: the force clause only captures intentional conduct "designed to cause harm [or to threaten harm]" to another. *Id.* at 1835 (Thomas, J., concurring in the judgment).

The Eleventh Circuit recently confirmed that understanding of *Borden* in *United States v. Carter*, 7 F.4th 1039 (11th Cir. 2021). Applying *Borden* to Georgia's aggravated assault statute, the Eleventh Circuit squarely held that a general intent assault statute does not satisfy the force clause where it does not require specific intent to harm or threaten harm to another person. *Id.* at 1045-46. The court emphasized two points. First, after *Borden*, the force clause "demands that the perpetrator direct his action at, or target, another individual." *Id.* at 1045 (citing *Borden*, 141 S. Ct. at 1825). Second, as construed by the Georgia courts, assault did "not require proof of specific intent" to harm; rather, the "State need only prove that the defendant intended to do the act that placed another in reasonable apprehension of immediate violent injury." *Id.* That type of general intent was insufficient to satisfy the force clause under *Borden*. *Id.*

Like the Eleventh Circuit, the Fifth Circuit has recently held that, because "general intent crime[s] . . . can be committed with 'reckless intent' . . . or by mere negligence . . . the defendant's state of mind is irrelevant," and such crimes are "not categorically crime[s] of violence under [the] force clause." *United States v. Garner*, No. 21-30260, 2022 WL 829840, at *3 (5th Cir. Mar. 21, 2022) (finding that aggravated assault with a firearm, under La. Stat. Ann. § 14:37.4, is a general intent crime and thus not a crime of violence). The dispositive question is whether such crimes "require[] the purposeful or knowing use of force, or whether

[they] proscribe[] negligent or reckless uses of force as well." *Id*. at *2. If the use of force can be accomplished by negligence or recklessness, it is no longer a crime of violence under *Borden*. *Id*. at *3.

The government recently conceded to the Tenth Circuit that, after *Borden*, a conviction under New Mexico's aggravated assault with a deadly weapon statute, N.M. Stat. § 30-3-2(A), is not a qualifying offense under the force clause of 18 U.S.C. § 924(e). *See* Appellee's Answer Br., *United States v. Gonzales*, No. 21-2022, 2021 WL 3236540, at *3-*4 (10th Cir. 2021). "One of the ways in which aggravated assault with a deadly weapon can be committed in New Mexico is through 'any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery.'" *Id*. at *3 (quoting N.M. Stat. § 30-3-1). Although the offense requires a general criminal intent to engage in the act that happens to put the victim in fear of injury, it does not require any specific intent to put the victim in fear of injury. *Id*. at *3-*4. Therefore, the government conceded that the offense is not a qualifying offense under the force clause: "*Borden* reveals that this type of conduct, though intentional in one sense, is insufficient to bring the statute within the [force clause] because 'like recklessness, [it] is not directed or targeted at another.' *Borden*, 141 S. Ct. at 1833." *Id*. at *4. The government concluded that the New Mexico statute "lacks the targeted conduct that the [force clause] requires" under *Borden*. *Id*. at *3. Accepting the government's concession, the Tenth Circuit vacated the defendant's sentence and remanded for resentencing. *See United States v. Gonzales*, No. 21-2022, 2021 WL 4185952 (10th Cir. July 26, 2021).

The court in *United States v. Blakney*, No. 11-562-1, 2021 WL 3929694 (E.D. Pa. Sept. 2, 2021), reached a similar result. Post-*Borden*, the court held that a Pennsylvania robbery offense which does not require an intentional threat of force is not a qualifying offense under the

force clause. *Id.* at *2. The court reasoned that "just as a defendant can cause bodily injury recklessly, so too could he pose a threat recklessly without intending to do so. In other words, without the defendant intending to threaten another, that person may feel threatened by the defendant's actions. In that case, it may be the defendant's reckless conduct that resulted in a threat." *Id.* That reasoning, and result, is equally applicable here.

### B. Eighth Circuit Case Law

The Eighth Circuit has not yet addressed the federal bank robbery statute in light of *Borden*. The Government relies on the Eighth Circuit's denial of Mr. Allen's petition to file a second or successive petition based on *Johnson*, in *Allen v. United States*, 836 F.3d 894 (8th Cir. 2016), to support its position that bank robbery is a crime of violence. GR 13. *Allen*, however, was a pre-*Borden* denial and did not analyze the mens rea issue at all. Instead, the panel majority relied on *United States v. Boman*, 810 F.3d 534, 543 (8th Cir. 2016), a case that was later vacated by the Supreme Court. *See Boman v. United States*, 137 S. Ct. 87 (2016). Judge Melloy, dissented from the denial in *Allen*, observing that "our circuit has held that the mens rea for federal bank robbery offense § 2113(a) does not attach to the use of violence or intimidation." 836 F.3d at 894-95 (citing cases). After *Borden*, Judge Melloy's observation is dispositive: because there is no mens rea needed to satisfy the "by force and violence, or by intimidation" element in the federal bank robbery statute, it is not a crime of violence.

The government argues that cases such as *United States v. Estell*, 924 F.3d 1291 (8th Cir. 2019), and *United States v. Harper*, 869 F.3d 624 (8th Cir. 2017), although decided before *Borden*, establish a mens rea sufficient to meet the requirements set by *Borden*. GR 15. This argument fails. *Estell* and *Harper* held that an intent to intimidate was not required. Rather, the focus of the threat of the physical force requirement was not on the mental state of the actor, but

13

on what the statement conveyed to a reasonable person.  *Estell*, 924 F.3d at 1293.  In other words, the impact of the defendant's words or actions on another person was determinative, regardless of defendant's state of mind.   A defendant who acted without knowledge that his actions could be perceived as a threat of physical force, could still be guilty of federal bank robbery.  This does not satisfy *Borden*'s requirements for a crime of violence.  *See Carter*, 7 F.4th at 1045; *Garner*, 2022 WL 829840 at *2-3.

Other Eighth Circuit precedent likewise proves that intent to harm is not required to convict for federal bank robbery.  In *United States v. Yockel*, 320 F.3d 818 (8th Cir. 2003), the court rejected the requirement that a defendant must know that his actions were intimidating. *Yockel* held that the lower court "correctly concluded that the *mens rea* element of bank robbery did not apply to the element of intimidation and properly excluded evidence on that issue." *Id.* at 824.

In *United States v. Pickar*, 616 F.3d 821 (8th Cir. 2010), the Eighth Circuit reaffirmed that defendants need not know that their actions were intimidating in order to be guilty of bank robbery by intimidation.  Intimidation is gauged by an objective standard that is satisfied "if an ordinary person in the bank teller's position could reasonably infer a threat of bodily harm from the bank robber's words and actions." *Id.* at 826.  *Pickar* also affirmed that, under this standard, the government "is also not required to prove that the defendant intended to intimidate anyone. Rather, the government must simply prove, beyond a reasonable doubt, that the defendant intended to do or say what he in fact did or said, and that the defendant's words or actions were of a kind that would make an ordinary person fear bodily harm." *Id*.

The Eighth Circuit does not require that a defendant have knowledge or an intent to harm in order to be guilty of federal bank robbery.  Therefore, it is not a crime of violence under *Borden*.

### C.  Seventh Circuit Case Law

Although the offense at issue here was committed in the Eighth Circuit and is thus governed by Eighth Circuit law, the government's attempt to rely on Seventh Circuit precedent does not help its cause.  As the government notes, the Seventh Circuit's case law is similar to the Eighth Circuit's.  GR 15.  Again, an intent to intimidate is not required.  GR 15-16 (citing *United States v. Williams*, 864 F.3d 826, 829 (7th Cir. 2017)).  Writing without the benefit of *Borden*, *Williams* explained that it is sufficient if the defendant acts intentionally.  He need not know or intend that his actions might cause another person to feel threatened.  Instead, the court determines whether a reasonable person is likely to feel threatened by the defendant's actions. *Id.* at 829-30.  As explained above, that threshold does not establish a crime of violence under *Borden*.

## V.    MR. ALLEN'S CONVICTION UNDER 18 U.S.C. § 2113(e) FOR KILLING A PERSON IN THE COMMISSION OF A BANK ROBBERY IS NOT A CRIME OF VIOLENCE BECAUSE IT APPLIES EVEN WHERE THE KILLING IS RECKLESS, ACCIDENTAL, OR UNINTENTIONAL.

The government argues that Mr. Allen's conviction under § 2113(e) constitutes a crime of violence because it adds the element of a killing to the elements of his § 2213(a) conviction. The government builds its argument on the assumption that the § 2113(a) conviction is itself a crime of violence.  GR 16-20.  But for all the reasons addressed above, it is not, and so the government's argument fails.

The government then argues that this Court should use a modified categorical approach to determine which of the alternative means of committing § 2113(e) should apply in this case.

GR 17-18.  Even were the government correct that the statute is divisible so that a modified categorical approach is appropriate – and it is not[3] – its argument is irrelevant because each of the three means the government identifies requires only that a killing occurs, but does not require that the killing be intentional or knowing.  Indeed, the government concedes that the killing need not be intentional under certain subsections of § 2113(e), GR 20, but argues, without any support, that if a person is killed during the commission of the offense, intentionality is required. GR 17, 20.  That, however, is not the law.  "[I]f death results (e.g., heart attack) while [the defendant]: (1) commits a bank robbery; (2) avoids/attempts to avoid apprehension for the commission of a bank robbery; (3) frees/attempts to free himself from arrest/confinement for bank robbery; or (4) forces another to accompany him without consent while engaged in (1), (2), or (3)," the killing element is satisfied.  *United States v. O'Reilly*, No. 05-80025, 2008 WL 283999, at * 2 (E.D. Mich. Feb. 1, 2008).  Thus, like in the traditional felony murder context, "if a defendant commits an *unintended* homicide while committing another felony, the defendant can be convicted of murder."  *Dean v. United States*, 556 U.S. 568, 575 (2009) (citing 18 U.S.C. § 1111) (emphasis added); *see also United States v. Tham*, 118 F.3d 1501, 1508 (11th Cir. 1997) (recognizing federal murder, 18 U.S.C. § 1111, "reflects the English common law principle that one who caused another's death while committing or attempting to commit a felony was guilty of murder even though he did not intend to kill the deceased").

United States v. Runyan*, 994 F.3d 192, 202 (4th Cir. 2021), does not help the government's argument.  *Runyan* was a pre-*Borden* case that had no need to address the *Borden*

---

[3] A statute is not divisible merely because it lists means of committing an offense disjunctively. *Mathis v. United States*, 136 S. Ct. 2243, 2253 (2016); *see, e.g.*, *United States v. Mathis*, 932 F.3d 242, 267 (4th Cir. 2019) ("Although the statute describes various ways that an individual may commit the act of kidnapping, namely, by force, intimidation, or deception, these alternatives represent various means of committing the crime, not alternative elements of the crime.")

issue presented here.  More importantly, *Runyan* involved a conspiracy to commit murder by hire charge that required, as an element of the offense, that the defendant acted with the intent to murder.  *Id.* at 203.  Section 2113(e), by contrast, does not require an intent to commit a murder, but only that a killing occurred.

The government supports its strained argument by changing the language of the statute. Section 2113 requires, in relevant part, that a person act "by force and violence, *or*, by intimidation . . . ."  18 U.S.C. § 2113(a) (emphasis added).  The government, however, argues that the killing here occurred by "force and violence, *and* intimidation."  GR 19 (emphasis added).  Perhaps the government's error was unintentional, but using the statute's actual language demonstrates that intimidation is an alternative means to the intentional use of force and violence.  The government's efforts to link these disparate means with the requirement of a killing, but without requiring an intentional or knowing mens rea for the killing, does not make § 2113(e) a crime of violence.

## VI.   THE GOVERNMENT'S EFFORT TO CREATE A CRIME OF "CAPITAL BANK ROBBERY" DOES NOT TURN MR ALLEN'S BANK ROBBERY PREDICATE INTO A CRIME OF VIOLENCE.

Lastly, the government tries to conjure a new crime of "capital bank robbery," arguing that the jury's sentencing findings, which occur after a finding of guilt, turn the predicate offenses underlying the conviction into crimes of violence.  GR 20-21.  The government's argument lacks any force.  The aggravating circumstances are considered *after* a jury has already convicted a defendant of a § 924(c) offense.  *See* 18 U.S.C. § 3591(a)(2) (specifying that threshold factors determination is made "at the hearing under section 3593"); 18 U.S.C. § 3593(b) (outlining the procedures for a "separate sentencing to determine the punishment to be imposed" that occurs *after* a finding of guilt.).

The only case cited in support of this novel argument, *In re Hall*, 979 F.3d 339 (5th Cir. 2020), is a pre-*Borden* case where a divided panel denied a request to file a successive petition challenging defendant's conviction and 60-month sentence for carrying a firearm during a crime of violence.  GR 22.  Such a denial of authorization to file a successive petition is not a decision on the merits.  *See Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997) ("The movant must get through two gates[, including authorization by the Circuit,] before the merits of [a successive § 2255] motion can be considered."); *accord In re Smith*, 285 F.3d 6, 7 (D.C. Cir. 2002); *Corrao v. United States*, 152 F.3d 188, 191 (2d Cir. 1998).  In any event, the court in *Hall* based its analysis on the proposition that the force clause does not require an intentional or knowing use of force, but includes conduct that "recklessly disregards the risk of injury to another person."  979 F.3d at 344.  Under *Borden*, that proposition is no longer valid, and neither is the analysis built upon it.  More fundamentally, the purported crime of violence that was used as a predicate offense for Mr. Allen's § 924(c) conviction was not "capital bank robbery."  It was bank robbery in violation of 18 U.S.C. § 2113(a) and (e).  The determination of a crime of violence is based on the elements of the predicate offenses of § 2113(a) and (e) and, as explained above, those offenses do not constitute a crime of violence under *Borden*.

WHEREFORE, for the foregoing reasons and those set forth in his petition for writ of habeas corpus, Petitioner prays that the Court issue a writ of habeas corpus vacating Count 2 of Petitioner's judgment of conviction and his sentence of death.

Respectfully submitted,

/s/ Alex Kursman
Alex Kursman
Assistant Federal Defender
Federal Community Defender Office
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Fax: (215) 928-0826
Alex_Kursman@fd.org

**<u>Certificate of Service</u>**

I, Alex Kursman, hereby certify that on this 25th day of March, 2022, I filed the
foregoing reply via the Court's electronic filing system, which will serve a copy of the motion
upon government counsel:

Caroline Costantin
Special Assistant United States Attorney
10 West Market Street
Suite 2100
Indianapolis, IN 46204

<u>/s/Alex Kursman</u>
Alex Kursman
Assistant Federal Defender
Federal Community Defender Office
 for Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Fax: (215) 928-0826